UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

RYAN BOARD,

        Plaintiff,

v.

UNKNOWN SMITH et al.,

        Defendants.
_____/

Case No. 2:19-cv-150

Honorable Robert J. Jonker

## **OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez,* 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Smith, Krause, and McLean. Plaintiff's Eighth Amendment claims against Defendants Canlas and Unknown Part(y)(ies) #1 remain in the case.

## Discussion

### I. Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Chippewa Correctional Facility (URF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues the following personnel at the URF facility: Nurses (unknown) Smith and Unknown Part(y)(ies); Doctor Bienvenido Canlas; Licensed Practical Nurse (LPN) Jody M. Krause; and Grievance Coordinator Mike McLean.

Plaintiff alleges that, on September 9, 2019, he went to health services for evaluation and treatment of pain and swelling in his left ear. Defendant Smith examined Plaintiff and informed him that he had an ear infection. She called a doctor and described Plaintiff's symptoms. After speaking with the doctor, Defendant Smith gave Plaintiff some ibuprofen and acetaminophen, together with several orange antibiotic pills (amoxicillin), which she placed in a small envelope. Smith did not indicate what antibiotic had been prescribed, but she advised Plaintiff to take one pill at each meal. She directed Plaintiff to take the first antibiotic pill while he was still in the health care unit.

Ten minutes after Plaintiff went back to his unit, Defendant Smith called him back to health care. Smith told Plaintiff that she had just noticed in his chart that Plaintiff was allergic to penicillin. Smith asked Plaintiff to retrieve the remainder of the pills and asked Plaintiff whether he had taken any. When Plaintiff reminded Smith that he had taken one in the health care unit, she advised Plaintiff that health care personnel would be checking on him. Defendant Smith exchanged the amoxicillin for azithromycin.

After Plaintiff returned to his unit, he became dizzy and nauseous, and his neck and jaw swelled up. Plaintiff informed the correctional officer on duty that he was having symptoms

2

of an allergic reaction. The officer sent Plaintiff back to health services, where Defendant Smith prescribed Plaintiff Benadryl to combat the allergic reaction. Smith told Plaintiff to go back to his unit and lie down.

Later that day, Plaintiff was called to health care, where he saw Defendant Nurse Unknown Part(y)(ies). Defendant checked Plaintiff's mouth and saw swelling of the tongue and throat. The nurse told Plaintiff that he had a fever of 104° and gave him Motrin. Plaintiff was told to wait three days, until Tuesday, September 13, 2018, when the doctor was scheduled to come in.

Plaintiff did not see the doctor on September 13. During the four days following his visit with the unknown nurse, Plaintiff's ear infection grew worse, and he suffered with ongoing symptoms of the allergic reaction, including a swollen throat and tongue, hearing loss, high fever, and itchy skin all over his body. He could not hold down either food or water and had constant headaches. Plaintiff claims that both the Unknown Nurse Defendant who saw him on September 9, and Defendant Dr. Canlas who originally prescribed the offending antibiotic and later the Benadryl to fight the allergic reaction, did nothing to address Plaintiff's serious and ongoing medical needs during this time.

When Plaintiff was finally seen in health care on September 14, 2018, Defendant Canlas discovered that Plaintiff had developed a second ear infection in his right ear. Plaintiff alleges that Nurse Practitioner Wilson (not a Defendant) provided him with Bactrim until a better medicine was ordered and received by the facility. On September 20, 2019, Plaintiff was issued Trimethoprim to treat the ear infection. He took the medication until September 30, 2018. Plaintiff complains, however, that he continued to suffer with symptoms of the allergic reaction until about October 5, 2018.

Plaintiff alleges that he filed multiple kites to health services. Defendant LPN Krause received Plaintiff's kite on September 20, 2019. She responded that she had forwarded the kite to Health Unit Manager Melissa LaPlaunt, noting that Plaintiff had filed multiple complaints about being given an antibiotic to which he was allergic and from which he was experiencing symptoms. Plaintiff contends that Defendant Krause knew or should have known that his condition was serious, but she provided him no treatment.

Plaintiff filed a grievance on September 12, 2018. Defendant McLean, however, rejected the grievance on September 18, because Plaintiff had not attempted to resolve the issue with the person most directly involved. Defendant McLean gave Plaintiff the option of attempting to resolve the issue with health services and refiling a new grievance. Plaintiff sent a memorandum to Health Unit Manager Melissa LaPlaunt, to which he attached the rejected grievance. When he received no response, Plaintiff filed a new grievance, which Defendant McLean rejected as duplicative of Plaintiff's first rejected grievance. Plaintiff again filed a grievance, attaching the earlier rejection letter and its instructions, together with copies of his kites to health care. Plaintiff pursued all three grievances through the third step of the grievance process.

Plaintiff contends that Defendants were deliberately indifferent to his serious medical needs when they erroneously prescribed and issued him a medication to which he was known to be allergic. He also alleges that Defendants delayed treating or failed to adequately treat both his serious allergic reaction to the medication and his progressive ear infection. Plaintiff complains that Defendant McLean retaliated against him for complaining about his medical issues, by rejecting his grievances, in an effort to thwart an investigation.

Plaintiff seeks compensatory damages.

## II. Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to

5

identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### III. Eighth Amendment

The Eighth Amendment prohibits the infliction of cruel and unusual punishment against those convicted of crimes. U.S. Const. amend. VIII. The Eighth Amendment obligates prison authorities to provide medical care to incarcerated individuals, as a failure to provide such care would be inconsistent with contemporary standards of decency. *Estelle v. Gamble*, 429 U.S. 102, 103-04 (1976). The Eighth Amendment is violated when a prison official is deliberately indifferent to the serious medical needs of a prisoner. *Id.* at 104-05; *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001).

A claim for the deprivation of adequate medical care has an objective and a subjective component. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). To satisfy the objective component, the plaintiff must allege that the medical need at issue is sufficiently serious. *Id.* In other words, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Id.* The objective component of the adequate medical care test is satisfied "[w]here the seriousness of a prisoner's need[ ] for medical care is obvious even to a lay person." *Blackmore v. Kalamazoo Cty.*, 390 F.3d 890, 899 (6th Cir. 2004). If the plaintiff's claim, however, is based on "the prison's failure to treat a condition adequately, or where the prisoner's affliction is seemingly minor or non-obvious," *Blackmore*, 390 F.3d at 898, the plaintiff must "place verifying medical evidence in the record to establish the detrimental effect of the delay in medical treatment," *Napier v. Madison Cty.*, 238 F.3d 739, 742 (6th Cir. 2001) (internal quotation marks omitted).

The subjective component requires an inmate to show that prison officials have "a sufficiently culpable state of mind in denying medical care." *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000). Deliberate indifference "entails something more than mere negligence," but can be "satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer,* 511 U.S. at 835. "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 837.

Not every claim by a prisoner that he has received inadequate medical treatment states a violation of the Eighth Amendment. *Estelle*, 429 U.S. at 105. As the Supreme Court explained:

> [A]n inadvertent failure to provide adequate medical care cannot be said to constitute an unnecessary and wanton infliction of pain or to be repugnant to the conscience of mankind. Thus, a complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner. In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs.

*Id.* at 105-06 (quotations omitted). Thus, differences in judgment between an inmate and prison medical personnel regarding the appropriate medical diagnoses or treatment are not enough to state a deliberate indifference claim. *Sanderfer v. Nichols*, 62 F.3d 151, 154-55 (6th Cir. 1995); *Ward v. Smith*, No. 95-6666, 1996 WL 627724, at *1 (6th Cir. Oct. 29, 1996). This is so even if the misdiagnosis results in an inadequate course of treatment and considerable suffering. *Gabehart v. Chapleau*, No. 96-5050, 1997 WL 160322, at *2 (6th Cir. Apr. 4, 1997).

The Sixth Circuit distinguishes "between cases where the complaint alleges a complete denial of medical care and those cases where the claim is that a prisoner received inadequate medical treatment." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). If "a

7

prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Id.*; *see also Rouster v. Saginaw Cty.*, 749 F.3d 437, 448 (6th Cir. 2014); *Perez v. Oakland Cty.*, 466 F.3d 416, 434 (6th Cir. 2006); *Kellerman v. Simpson*, 258 F. App'x 720, 727 (6th Cir. 2007); *McFarland v. Austin*, 196 F. App'x 410 (6th Cir. 2006); *Edmonds v. Horton*, 113 F. App'x 62, 65 (6th Cir. 2004); *Brock v. Crall*, 8 F. App'x 439, 440 (6th Cir. 2001); *Berryman v. Rieger*, 150 F.3d 561, 566 (6th Cir. 1998). "Where the claimant received treatment for his condition, as here, he must show that his treatment was 'so woefully inadequate as to amount to no treatment at all.'" *Mitchell v. Hininger*, 553 F. App'x 602, 605 (6th Cir. 2014) (quoting *Alspaugh v. McConnell*, 643 F.3d 162, 169 (6th Cir. 2011)). He must demonstrate that the care he received was "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Miller v. Calhoun Cty.*, 408 F.3d 803, 819 (6th Cir. 2005) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989)).

Plaintiff fails to state a claim against Defendant Smith, because his allegations against Smith demonstrate nothing more than negligence. Defendant Smith diagnosed an ear infection and sought medical advice, obtaining authorization to dispense an antibiotic. Although Defendant Smith should have been aware that Plaintiff was allergic to penicillin, and therefore Amoxicillin, she was negligent in reviewing Plaintiff's record until a few minutes after he had taken his first dose of the medication. She realized her error within ten minutes and called Plaintiff back to health care. She then instituted monitoring of his condition by health care personnel. When Plaintiff experienced symptoms of allergic reaction, Defendant Smith provided him with Benadryl.

Although Plaintiff's allegations demonstrate that Defendant Smith may have negligently issued him amoxicillin, she diagnosed and treated his ear infection, took prompt action upon the discovery of her medication error, and was responsive to Plaintiff's complaints about his symptoms. Plaintiff states no additional facts against Defendant Smith that would elevate his allegations from negligence to deliberate indifference. As a consequence, Plaintiff fails to state a claim against Defendant Smith.

Plaintiff also fails to state a claim against Defendant LPN Krause. Plaintiff alleges that Defendant Krause only received a medical kite from Plaintiff on September 20, 2018, 11 days after he was given a dose of medication to which he was allergic. Defendant Krause did not ignore the kite. Instead, she referred the complaint to her superior, who was better positioned to address the medical concerns. Plaintiff's allegations against Defendant Krause fall far short of demonstrating that she was deliberately indifferent to Plaintiff's medical needs.

On initial review, the Court concludes that Plaintiff's allegations against Defendants Canlas and Unknown Part(y)(ies) #1 are sufficient to state an Eighth Amendment claim. These Defendants therefore remain in the case.

## IV. Grievance Process

Plaintiff alleges that Defendant McLean retaliated against him for filing grievances against health care personnel by rejecting his grievances, as part of an attempt to thwart the investigation process. Plaintiff also suggests that Defendant McLean's actions deprived Plaintiff of his right to a grievance process.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was

9

engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). Plaintiff therefore has properly alleged the first element of a retaliation claim.

Plaintiff's retaliation claim, however, founders at the second step. The Sixth Circuit held that where the defendant's only involvement in the allegedly unconstitutional conduct is "the denial of administrative grievances or the failure to act," the defendant cannot be liable under § 1983. *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). Moreover, rejection of a grievance does not impair a prisoner's right to bring a lawsuit. *See Branch v. Houtz*, No. 1:16-cv-77, 2016 WL 737779, at *6 (W.D. Mich. Feb. 25, 2016); *Weatherspoon v. Williams*, No. 2:14-cv-108, 2015 WL 2106401 (W.D. Mich. May 6, 2015) (holding that the rejection of a grievance is not adverse action); *cf. Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005) ("[A]n ordinary person of reasonable firmness would not be deterred from filing legitimate grievances by a policy that merely provided that a grievance officer would screen frivolous grievances."); *Jackson v. Madery*, 158 F. App'x 656 (6th Cir. 2005) (placement of modified grievance access does not constitute adverse action).

Moreover, to the extent that Plaintiff alleges that he was deprived of his right to an effective or complete grievance process, he fails to state a constitutional claim. Plaintiff has no due process right to file a prison grievance. The courts repeatedly have held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker,* 128 F. App'x at 445; *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

In addition, Plaintiff's allegations do not support a claim under the First Amendment for denial of Plaintiff's right to petition government. The First Amendment "right to petition government does not guarantee a response to the petition or the right to compel government officials to act on or adopt a citizen's views." *Apple v. Glenn*, 183 F.3d 477, 479 (6th Cir. 1999). Defendants' actions have not barred Plaintiff from seeking a remedy for his grievances. *See Cruz v. Beto*, 405 U.S. 319, 321 (1972). "A prisoner's constitutional right to assert grievances typically is not violated when prison officials prohibit only 'one of several ways in which inmates may voice their complaints to, and seek relief, from prison officials' while leaving a formal grievance procedure intact." *Griffin v. Berghuis*, 563 F. App'x 411, 415-16 (6th Cir. 2014) (citing *N.C. Prisoners' Labor Union, Inc.*, 433 U.S. 119, 130 n.6 (1977)). Indeed, Plaintiff's ability to

seek redress is underscored by his pro se invocation of the judicial process. *See Azeez v. DeRobertis*, 568 F. Supp. 8, 10 (N.D. Ill. 1982).

Moreover, even if Plaintiff was improperly prevented from pursuing a grievance, his right of access to the courts to petition for redress of his grievances (i.e., by filing a lawsuit) cannot be compromised by his inability to file institutional grievances, and he therefore cannot demonstrate the actual injury required for an access-to-the-courts claim. *See, e.g.*, *Lewis v. Casey*, 518 U.S. 343, 355 (1996) (requiring actual injury); *Bounds v. Smith*, 430 U.S. 817, 821-24 (1977). The exhaustion requirement only mandates exhaustion of *available* administrative remedies. *See* 42 U.S.C. § 1997e(a). If Plaintiff were improperly denied access to the grievance process, the process would be rendered unavailable, and exhaustion would not be a prerequisite for initiation of a civil rights action. *See Ross v. Blake*, 136 S. Ct. 1850, 1858-59 (2016) (reiterating that, if the prisoner is barred from pursuing a remedy by policy or by the interference of officials, the grievance process is not available, and exhaustion is not required); *Kennedy v. Tallio,* 20 F. App'x 469, 470 (6th Cir. 2001).

In light of the foregoing, the Court finds that Plaintiff fails to state a cognizable claim against Defendant McLean.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's claims against Defendants Smith, Krasuse, and McLean will be dismissed from the action for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). Plaintiff's Eighth Amendment claims against Defendants Canlas and Unknown Part(y)(ies) #1 remain in the case.

An order consistent with this opinion will be entered.


Dated:   September 25, 2019            /s/ Robert J. Jonker
                                      ROBERT J. JONKER
                                      CHIEF UNITED STATES DISTRICT JUDGE