UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

RYAN BOARD #766060,                               Case No. 2:19-cv-00150

        Plaintiff,                               Hon. Robert J. Jonker
                                                         U.S. District Chief Judge
v.

UNKNOWN SMITH, et al.,

        Defendants.
_____/

## REPORT AND RECOMMENDATION

### I. Introduction

This is a civil rights action brought by state prisoner Ryan Board pursuant to 42 U.S.C. § 1983. Board alleges that Defendants failed to properly treat his ear infection. The remaining Defendants are Dr. Canlas and an unknown nurse. The Court summarized the facts in its opinion dated September 25, 2019. (ECF No. 5.)

> Plaintiff alleges that, on September 9, 2018, he went to health services for evaluation and treatment of pain and swelling in his left ear. [Dismissed] Defendant Smith examined Plaintiff and informed him that he had an ear infection. She called a doctor and described Plaintiff's symptoms. After speaking with the doctor, Defendant Smith gave Plaintiff some ibuprofen and acetaminophen, together with several orange antibiotic pills (amoxicillin), which she placed in a small envelope. Smith did not indicate what antibiotic had been prescribed, but she advised Plaintiff to take one pill at each meal. She directed Plaintiff to take the first antibiotic pill while he was still in the health care unit.
>
> Ten minutes after Plaintiff went back to his unit, Defendant Smith called him back to health care. Smith told Plaintiff that she had just noticed in his chart that Plaintiff was allergic to penicillin. Smith asked Plaintiff to retrieve the remainder of the pills and asked Plaintiff

whether he had taken any. When Plaintiff reminded Smith that he had taken one in the health care unit, she advised Plaintiff that health care personnel would be checking on him. Defendant Smith exchanged the amoxicillin for azithromycin.

After Plaintiff returned to his unit, he became dizzy and nauseous, and his neck and jaw swelled up. Plaintiff informed the correctional officer on duty that he was having symptoms of an allergic reaction. The officer sent Plaintiff back to health services, where Defendant Smith prescribed Plaintiff Benadryl to combat the allergic reaction. Smith told Plaintiff to go back to his unit and lie down.

Later that day, Plaintiff was called to health care, where he saw Defendant Nurse Unknown Part(y)(ies). Defendant checked Plaintiff's mouth and saw swelling of the tongue and throat. The nurse told Plaintiff that he had a fever of 104° and gave him Motrin. Plaintiff was told to wait three days, until Tuesday, September 13, 2018, when the doctor was scheduled to come in.

Plaintiff did not see the doctor on September 13. During the four days following his visit with the unknown nurse, Plaintiff's ear infection grew worse, and he suffered with ongoing symptoms of the allergic reaction, including a swollen throat and tongue, hearing loss, high fever, and itchy skin all over his body. He could not hold down either food or water and had constant headaches. Plaintiff claims that both the Unknown Nurse Defendant who saw him on September 9, and Defendant Dr. Canlas who originally prescribed the offending antibiotic and later the Benadryl to fight the allergic reaction, did nothing to address Plaintiff's serious and ongoing medical needs during this time.

When Plaintiff was finally seen in health care on September 14, 2018, Defendant Canlas discovered that Plaintiff had developed a second ear infection in his right ear. Plaintiff alleges that Nurse Practitioner Wilson (not a Defendant) provided him with Bactrim until a better medicine was ordered and received by the facility. On September 20, 2019, Plaintiff was issued Trimethoprim to treat the ear infection. He took the medication until September 30, 2018. Plaintiff complains, however, that he continued to suffer with symptoms of the allergic reaction until about October 5, 2018.

(*Id.*, PageID.43-45.)

Defendant Dr. Bienvenido Canlas filed a motion for summary judgment. He argues that Board failed to exhaust his administrative remedies. (ECF No. 11.) Board filed a response. (ECF No. 13.) Defendant Canlas filed a reply (ECF No. 14.) and Board filed a sur-reply (ECF No. 16.)

In addition, Defendant Canlas has filed a motion to strike the unauthorized sur-reply. (ECF No. 18.) Board has filed a motion to strike Defendant Canlas's reply. (ECF No. 20) and a motion to identify unknown party #2 as Nurse Robyn L. Waybrant (ECF No. 17.)

The undersigned has reviewed the pleadings and associated documents and respectfully recommends that the Court grant Defendant Canlas's motion for summary judgment, deny Board's motion to identify Jane Doe, and deny the motions to strike.

**II. Summary Judgment Standard**

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421

---

[1] Disputed issues of fact regarding exhaustion under the PLRA may be decided by the court in an evidentiary hearing or bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

3

F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter*

4

*v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. ___, 136 S.Ct. 1850, 1859-60 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at

737*)*. And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id*. When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

Michigan Dept. of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019), sets forth the applicable grievance procedures for prisoners in MDOC custody at the time relevant to this complaint. Inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten

business days of the response, or if no response was received, within ten days after the response was due. MDOC Policy Directive 03.02.130 at ¶¶ T, BB. The respondent at Step II is designated by the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal

Affairs Division for review and will be investigated in accordance with MDOC Policy Directive 01.01.140. The prisoner will be promptly notified that an extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant

> defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325.  We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Plaintiff's Allegations

Plaintiff's allegations are summarized in the table below.

| Claim | Defendant | Date or Date Range of Incident(s) |
|---|---|---|
| Deliberate indifference for treatment of ear infection. | Dr. Canlas and "unknown nurse." | Sept. 9 to Sept. 13, 2018 |
| Deliberate indifference for treatment of ear infection. | Dr. Canlas | Sept. 14 to Oct. 5, 2018 |

### V. Grievances Identified by the parties

The parties have identified three relevant grievances.  These grievances are summarized below.

---

[2]   In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints."  *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization failed to grieve the claim that the doctor erred by not prescribing Ranexa.

9

| Grievance No. | Person Named | Allegation | Date or Date Range of Incident(s) | Results at Step 1 | Results at Step 2 | Results at Step 3 |
|---|---|---|---|---|---|---|
| **URF-18-09-2619-28I**<br><br>Submitted on Sept. 10, 2018<br><br>(ECF No. 11-2, PageID.81, 116, 125-29.) | **Nurse Jane Doe** and Nurse Smith | Nurses were negligent for failing to recognize allergy to Penicillin after notifying doctor that Plaintiff was not allergic to any medications and delay in providing care to Plaintiff | Sept. 9, 2018 | Rejected at Step 1 because Plaintiff failed to consult with staff member prior to filing grievance | Rejection upheld | Rejection upheld |
| **URF-18-09-2633-28A**<br><br>Submitted on Sept. 13, 2018<br><br>(ECF No. 11-2, PageID.81, 119-124.) | **Jane Doe nurses** | Nurses gave penicillin as punishment when they knew Plaintiff was allergic to penicillin and delayed providing care to Plaintiff | Sept. 11, 2018 | Rejected as duplicative to **URF-18-09-2619-28I** | Rejection upheld | Rejection upheld |
| **URF-18-09-2727-28J**<br><br>Submitted on Sept. 19, 2018<br><br>(ECF No. 11-2, PageID.81, 112-14.) | Nurse Smith | Smith prescribed penicillin after telling doctor that Plaintiff was not allergic to any medications. | Sept. 9-14, 2018 | Rejected | Rejection upheld | Rejection upheld |

## VII. Analysis of Grievances

Board submitted three grievances on the issue involving his medical treatment for his ear infection. All three of Board's grievances allege that nurse Smith erred in giving him Penicillin when his medical chart indicated that he was allergic to

10

Penicillin. The grievances assert that the error was the result of either negligence or deliberate indifference. Board never named Dr. Canlas in a grievance, but two of his grievances indicate that he overheard nurse Smith telephone a doctor and tell that doctor that Board was not allergic to any medication. Each of Board's grievances were procedurally rejected.

### 1. First grievance: URF-18-09- 2619-28I

On September 10, 2018, Board submitted his Step I grievance **URF-18-09-2619-28I (changed from URF-18-09-2619-12E3)** with an incident date of September 9, 2018. (ECF No. 11-2, PageID.128.) Board explained that **nurse Jane Doe** examined his ear and told him he had an infection. After she called a **doctor**, she gave him medications consisting of pain relievers and an antibiotic. Board had an allergic reaction to the antibiotic and the nurse gave him medication to counter the allergic reaction. Board stated that the nurse was negligent for failing to ask him if he was allergic to penicillin before she called the doctor. The Step I grievance is attached in part below:

What attempt did you make to resolve this issue prior to writing this grievance? On what date? 9/9/2018
If none, explain why. I went to health care for pain in my left ear. I saw a female nurse, she called the facility Doctor. I was prescribe some medication for my pain ear infection by this female nurse. I went back to the unit. I was called back to health service in a ten-minute time by the same nurse. I also called back to health service a third time.

State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. I went to health service due to swelling and pain in my left ear. I saw a female nurse (Jane Doe) ~~Jane Doe~~, she checked my ear and seen that I had a ear infection. She called a Doctor and described my problems and discussed I was not alergic to anything. After there conversation the nurse gave me some (Cedaprin) ibprofenusp, Aypenal (Acetaminophen and seven orange Anti-bacterial pills in a small envelope to take at breakfast, lunch and dinner. She told me to take one of the pills now, which I did, and ~~she wanted I'll~~ statsed, "endure"for three days, till I can get right treatments. I went back to the unit and ten-minutes later was called back to healthcare by the same nurse, she acknowledged she looked at my chart and seen that I was alergi to Penacilin and asked I retrive the orange Anti-bacterial pills. I explained I took one pill already and she insited they'll call me later to check on me and switched those pills out for (Azithromycin Z-pac 250 mg tcbs.) She told me to take one of those pills now and sent me back. I became dizzy, naused, and sore in my neck and jaws line, after a nap, at 1:30pm I told C.O. I am having symptions of an allergic reaction. I had to walk back to health care where the same nurse checked my mouth and saw the swelling as I told her swallowing my saliva became painful up the left sideeof my jaw, neck and ear and I missed meals and had a high fever, dizziness, stamach pains,

Grievant's Signature

4 Attchments included -> Back

> and swelling and a itch. She then prescribed me another Pill [Benadryl] to combat the allergic reaction and told me to go lay down. later that Day, I was called back to health Care, 2nd shift nurse [Jane Doe] checked my mouth to see minor swelling in tongue and throat, stated I "have a fever over 104°" and gave me moltrin on top of the excisive amount of Pills I already ingested with no food.
> This nurse [Smith] was negligent in not checking my chart before issuing me Pills to take I'm allergic to. She failed to ask me as standarded Procedure before notifying URF Doctor that I wasn't allergic, prescribing me this Penacilin in it. Because this nurses [Smith] Negligence, caused and Continue to cause me to suffer unnessery Pain (Physically, Emotionally, Mentally). The nurse Continue to give me more Pills to mix on my empty stomach in combat of ear infection rather after hours later, after my warning she issued Product [Pill] to combat my allergic reaction to Penacilin. UNDER 28 U.S.C 1746 I ask for relief for the Damaged for the lack of male Practice insued upon my body and treatment. I ask for relief for the Pain I still endure and Past and future effects. I also ask for too a investigation into health Services of URF Providers, and discipline for negligence.

(ECF No. 11-2, PageID.130.) The grievance was rejected at Step I and the rejection was upheld at Step II and Step III. (*Id.*, PageID.125, 127, and 129.)  The Step I response, dated September 18, 2018, is attached in part below:

> **SUBJECT:** Receipt/Rejection/Denial for Step I Grievance
>
> Your Step I grievance regarding **Grievance Rejections** was received in this office on **09/12/18** and was rejected due to the following reason:
>
> Your grievance is being rejected for the reason that you are in violation of PD 03.02.130. This procedure states that you must attempt to discuss the issue with the person(s) most directly involved to resolve this issue before filing a grievance (this includes kiting when necessary). According to your grievance form you have failed to do this. Grievance denied at first step. If, after you have discussed this issue with the staff person(s) involved and the issue is not resolved you may resubmit this issue on a new step I form. If you do wish to resubmit this issue it must still be within the time limits prescribed in OP 03.02.130. Any future references to this grievance should utilize this identifier:
>
> URF — 18 — 09 — 2619 — 28 I
>
> **Additional Information**
>
> The grievance category code has been changed to reflect a rejection. Any future reference to this grievance should utilize the new identifier (URF-18-09-2619-28l).

(*Id.*, PageID.129.)

### 2. Second grievance: URF-18-09-2633-28A

Board also submitted Step I grievance **URF-18-09-2633-28A** on September 13, 2018, asserting an incident date of **September 11, 2018**. (ECF No. 11-2, PageID.122.) This grievance was submitted before he received his Step I response in grievance **URF-18-09- 2619-28I** that asserted an incident date of **September 9, 2018.**

Again, Board explained that he was denied treatment by **female nurses (Jane Doe)** and a **doctor** for his ear pain. The Step I grievance and response in **URF-18-09-2633-28A** are attached in part below:

> What attempt did you make to resolve this issue prior to writing this grievance? On what date? 9/11 - 9/12
> If none, explain why. I've placed multiple urgent health care kites in, explaining what I was told by nurse's I'll be seen 9/11/18, 3 Days later, for unknown reasons they Delay, Denied and ignored my treatment and now I suffer Pain unbearable. I spoke to C.O. to call in unit but there was told I'll be seen tuesday also, tuesday has passed and I can't endure much longer.
>
> State problem clearly. Use separate grievance form for each issue. Additional pages, using plain paper, may be used. Four copies of each page and supporting documents must be submitted with this form. The grievance must be submitted to the Grievance Coordinator in accordance with the time limits of OP 03.02.130. According to Female nurses (Jane Doe) I seen 9/9/18 4 times, I was Denied medical treatment by Doctor and nurses for correct medication for ear infection. I was told to wait three Day(s and or) till tuesday to be called out of medical attention, pills and treatment from Doctor to combat the Pain I was enduring. I was told to endure this pain til 9/11, Before I was issued medication I was allergic to (Penicilin). Tuesday has passed and since then my pain level is ten and the symptoms Deprives me of food, sleep and ability to hear and walk properly. I have now a swelling vien, sore and swollen left side of neck and face, shocks of electricity though my Jaw and brain has occured back to back Depriving me of sleep with Pain in my spine, coldness, shakes, and sweatness. My ear leaks green fluids that smell of rotten eggs and my hearing has ceased, However, heart beating throbs of Pain arise inside. I have not been checked by health care as I was told and their neglect to see me I believe is punishment as was the issuing of Penicilin Pills After knowing I was allergic to them. I have put two kites in, in the Passed two Days urgently asking for answers and help. But this trama has been inflicted by health cares lack of male practice to help a patient. 4-5 Days have Passed and I Don't know how long they'll Deny me treatment, I want relief for my Pain I suffer and treatment by Caring officals. Due to the trama I endure Physically, emotional, mentally I want monetary Damages. /s/ Grievant's Signature

**SUBJECT:** Receipt/Rejection/Denial for Step I Grievance

Your Step I grievance regarding **Grievance Rejections** was received in this office on **09/13/18** and was rejected due to the following reason:

Your grievance is being rejected because the issue you specify is a duplicate of the grievance listed at the end of this paragraph that has already been processed. Grievance denied. Any future references to this grievance should utilize this identifier:

URF — 18— 09 — 2633 — 28 A

**Additional Information**

Duplicative of URF 18 09 2619 12E3.

(ECF No. 11-2, PageID.122, 123.) The rejection was upheld at Step II and Step III of the grievance process. (*Id.*, PageID.119, 121.)

15

### 3. Third grievance: URF-18-09-2727-28J

As directed, on September 19, 2018, Board resubmitted another similar grievance **URF-18-09-2727-28J**, but this time he named "**Female nurse Smith**" instead of Jane Doe. (ECF No. 11-2, PageID.115.)  The Step I grievance in part is attached below:

[handwritten grievance form image]

(ECF No. 11-2, PageID.115.)

On September 24, 2018, Board's Step I grievance was rejected for the following reason:

```
SUBJECT:    Rejection
Your Step I grievance regarding    Grievance Rejections
was received in this office on    09/21/18    and was rejected due to the following reason:

Your grievance is being rejected for the reason that you are in violation of PD 03.02.130.
This grievance is regarding your dissatisfaction with a response to an issue previously
grieved. It is being rejected according to policy as you are not allowed to file a new
grievance and must advance the previous grievance to the next step.
Any future references to this grievance should utilize this identifier:

    URF —  18 —  09  —  2727  —  28 J
```

(ECF No. 1-1, PageID.199.) The rejection was upheld at Step II and Step III of the grievance process. (ECF No. 11-2, PageID.112,114.)

### VIII. Defendant Dr. Canlas

Board never named Dr. Canlas in a grievance. Although, Board mentioned that Nurse Smith telephoned a "doctor" in his grievances, he only stated that he overheard Nurse Smith tell the doctor that Board was not allergic to any medications. In addition, each of the grievances were not properly filed and were rejected. Even if the Court could overlook the grievance rejections, Board never named Dr. Canlas, and never asserted any facts in his grievance that could show that the "doctor," assuming that doctor was Dr. Canlas, acted with deliberate indifference to Board's ear infection. Board simply stated he overheard Nurse Smith tell the doctor that Board was not allergic to any medications. In the opinion of the undersigned, that allegation, without more, fails to exhaust a claim that Defendant Canlas was deliberately indifferent to Board's ear infection.

As noted above, one of the purposes of the exhaustion requirement is to "afford[ ] corrections officials time and opportunity to address complaints internally before

allowing the initiation of a federal case." *Porter*, 534 U.S. at 524. Here, Board did not identify Dr. Canlas and did not give prison officials a reason to think that Dr. Canlas was deliberately indifferent to Board's medical needs. In other words, Board did not take the steps necessary to exhaust his administrative remedies. According, it is respectfully recommended that Defendant Canlas be dismissed from this action due to Board's failure to properly exhaust a deliberate indifference claim against him.

### IX. Motion to Identify a New Party

Board asks this Court to order the U.S. Marshals Service to serve a summons and complaint on Nurse Robyn Waybrant, whom he now identifies as his Jane Doe nurse Defendant. In two of his rejected grievances, Board explained Jane Doe / Waybrant's involvement as:

> I was called back to healthcare [on September 9, 2018], 2nd shift nurse (Jane Doe) checked my mouth to see minor swelling in tongue and throat, stated I "have a fever over 104 [degrees] and gave me Motrin on top of the excessive amount of pills I already ingested with no food.

(ECF No. 11-2, PageID.118, 130.) In his second grievance, Board alleged that he was told by nurse Jane Doe to endure the pain for three days and he would be scheduled to see a doctor.

Board alleged in his complaint that he was denied treatment for four days after this visit despite suffering worsening pain and that when Dr. Canlas examined him on September 14, 2018, a second ear infection was discovered. While this presents a close question factually, Board failed to exhaust any claim against Jane Doe that could rise to an Eighth Amendment deliberate indifference claim. Board simply asserted in his grievance that Jane Doe

18

provided him with Motrin to assist in getting his fever down and told him he would be scheduled to see a doctor in three days. Although, Board says that it took four days before he saw Dr. Canlas.

Although, Board may have asserted enough facts in his complaint to allege that nurse Jane Doe caused either a delay in his medical treatment or refused to treat him before he developed his second ear infection, those facts were never presented in a properly exhausted grievance.

The Court can dismiss a claim that is frivolous, malicious, or fails to state a claim upon which relief can be granted under U.S.C. §§ 1915(e)(2), 1915A, or 42 U.S.C.§ 1997e(c). Board's exhausted allegations that nurse Jane Doe / Waybrant gave him Motrin to bring down his fever and scheduled him to see a doctor in three days simply fail to rise to the level of Eighth Amendment conduct that could state a claim for relief that Defendant Doe was deliberately indifferent to Board's serious medical needs. Because such allegations fail to show that Doe / Waybrant had "a sufficiently culpable state of mind in denying medical care," this claim lacks merit. *Brown v. Bargery*, 207 F.3d 863, 867 (6th Cir. 2000).

For these reasons, it is respectfully recommended that the Court deny the "motion identifying party unknown."

### VIII. Recommendation

The undersigned respectfully recommends that this Court:

    1. GRANT Defendant Dr. Canlas's motion for summary judgment and dismiss Defendant Canlas without prejudice (ECF No. 11):

    2. DENY Plaintiff Board's motion to identify unknown party Jane Doe (ECF No. 17); and

    3. DENY Plaintiff Board and Defendant Dr. Canlas's motions to strike (ECF Nos. 8 and 20) as moot.[3]

Dated: July 2, 2020            /s/ *Maarten Vermaat*
                                               MAARTEN VERMAAT
                                               U. S. MAGISTRATE JUDGE

## NOTICE TO PARTIES

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).

---

[3] There exists no reason to strike Dr. Canlas's properly filed reply brief (ECF No. 14.) Board's sur-reply (ECF No. 16) was improperly filed. A party must first seek permission from this Court before filing a sur-reply. W.D. Mich. LCivR 7.2(c). Nevertheless, striking Board's sur-reply or Dr. Canlas's reply would not change the undersigned's report and recommendation regarding Dr. Canlas's motion for summary judgment.